Good morning. May it please the court. This is a case that can be resolved with a simple discretionary restitution statute, the VWPA 3663. That's an indication from Congress that restitution in a case like this is supposed to be discretionary and not mandatory under the MVRA. Congress intentionally inserted the language when it passed the MVRA, it inserted language into the VWPA as a cross reference, this other than an offense set out in the MVRA, but it did so with specific reference to this statute. The amending language says after 46504 of title 49, insert comma other than an offense in the MVRA. And that's a clear indication that this was not an oversight on the part of Congress. It had ample opportunity to strike that statute from the VWPA if it intended it to always fall under the MVRA. And of course the government has never pointed to any type of situation when restitution would ever be discretionary in a 46504 case. And that would render the statutory language surplusage and superfluous in the statute. Can I just back you up for one second? Because I want to make sure I understand exactly what's going on in this case. So the actual controversy in this case, am I right about this, is over whether the restitution award should be $22,000 or more like $10,000? That's correct. And your position is that if the district court had considered the restitution under the discretionary provision, he might have brought the number down to reflect ability to pay? That's correct. And the factors that are set out in 3664 include ability to pay and his ongoing needs for his dependents or medical needs. And the last piece is that the district court seems to have considered it under the mandatory provision under a view that I believe the government has now disclaimed that it was enough that there was an identifiable victim with a pecuniary loss. That was enough to get you to the mandatory provision, right? That's my reading of what the district court found specifically in the record. Okay. So is there a reason we shouldn't just send this back to the district court and say, look, you got this wrong. You need to figure out whether it was a crime of violence. And also maybe whether you're inclined to, whether this makes any difference or whether you might order the same restitution award under either provision anyway. Is there a reason, this seems like there was an error below, is there a reason we can't send this back and make sure it makes a difference before we get into all of these big questions about what's a crime of violence and the residual cause and all of that? Well, we'd certainly be happy with another opportunity to argue before the district judge. But this is a purely legal threshold issue about whether the judge can take these factors into account at all. And I think it would almost be something of an advisory opinion for a judge to say, well, if it weren't mandatory, I might consider this and I might find these certain factors. So I don't think that's necessary here. Certainly that is a way to resolve it that we would be satisfied with. But it is a legal issue of statutory construction. And this is a statute that's not infrequently prosecuted. And it would be helpful to litigants throughout the circuit to have some guidance about whether this is a crime of violence. To do that, we would have to say that the MVRA is not a disjunctive statute, but it's conjunctive, correct? The sections that say if it's a crime of violence and there's a victim that suffered a pecuniary loss, yes, that would be a requirement. And the government has argued it on that theory. The D.C. Circuit has found that that's the case. And that's really the only statutory construction that makes sense with the word and there in the statute. Because otherwise, you would have a situation where something could be deemed a crime of violence or one of the other enumerated offenses, but there's no loss and the judge would be required to impose restitution. So it's kind of a nonsensical standard. And so that's why it has to be conjunctive for both of those set out. And, again, that was something that the government argued mistakenly below, but I believe they have effectively conceded at this stage, Your Honors. Can you give me an example of how a person can assault or intimidate a flight crew member without a threat of violence? Yes, and there are plenty of cases where that happens. And it typically comes up in a situation where the passenger creates a disturbance or is disobedient, perhaps violates some rule like smokes in the lavatory and simply refuses to obey the flight crew member's instructions. And those cases do get charged under this statute. We've pointed specifically to the Hicks case from the Fifth Circuit, which is a case where passengers on a plane would not turn off their radio and were being very loud and using profanity towards the flight crew member. And there was never any sense of a threat. And, in fact, the Fifth Circuit found that this statute does not require a direct or even a veiled threat in order for there to satisfy the statute. The Ghilardi case, which is a Fourth Circuit unpublished decision, involved a defendant who was yelling and cursing. That's cited in the brief. And then we found other cases where, and this is not in the Joint Appendix, but it is in the record as an attachment to our sentencing pleading, that we were trying to present what we thought were comparable cases to aid the judge in determining a sentence. But there's a case called Auerbach from Alaska, I can provide the citation if you'd like, where a passenger was running up and down and refused to get in her seat and was simply so disruptive that the flight crew decided to divert the airplane. And what's the theory in these cases? Because I think everyone agrees, right, that intimidation means, for intimidation, you have to show words or conduct that would give a reasonable person fear for bodily safety. And so is the idea that passengers are reasonably afraid the plane is going to crash, is that what's going on? I think that that's the chain of logic, that the inference is that if the flight crew member is not able to perform his or her duties, that that could have complications down the road. But, of course, endangering the aircraft is not an element of this offense. It's only interference with the duties. So it could be something as minor as not being able to serve drinks in a timely fashion. Then where does the ‑‑ I mean, I've read these cases, too. I'm just trying to figure out what is the theory. How does preventing a flight attendant from serving drinks give a reasonable person fear for his or her bodily safety? Well, we don't ‑‑ How is the government making its case in these cases is what I'm asking. Well, I think as a practical matter, in a lot of these cases, it's charged this way and they either plead down to misdemeanors or if the government insists on a felony, they're not insisting on jail time. And so a lot of these cases simply get resolved with pleas and time served sentences or probationary sentences. This was actually on the longer end of some of the sentences I've seen in these cases. And so I think in a lot of cases it's simply not litigated. And, in fact, I found a case where, and I can provide this citation. For our purposes, right, we have to look at what the statute requires. Putting to one side whether there are failures of proof in individual cases, we have to look at here's what the statute requires. Words or conduct that would give a reasonable person fear for bodily safety and compare that to the force clause, right? So I guess I'm asking you, how can something put someone in reasonable fear for their bodily safety but not involve physical force? Well, for two reasons. One, because the force clause requires the use of violent physical force on the part of the defendant. That's, of course, not required here. And intimidation could just be that someone is a large, hulking individual that simply scares the flight attendant by his very stature or presence or the fact that he's disobedient. And so what we have to keep in mind is the purpose of this statute is to prevent that interference. And so I think the way that we would define it is intimidation is words or conduct on the part of the defendant that have the result of putting a reasonable person in apprehension that her duties might be interfered with. So you don't think it requires fear for bodily safety? I don't think so, either under the case law or the statutory language, unless we assume that in all cases interference with the flight crew could have some effect or some risk of endangering the aircraft, which is sort of a downstream effect, and it's not required under the statute as an element of the offense. And so that's, again, I think we have to keep in mind the overall purpose of the statute when we're construing what intimidation is. And also, because it's set out as assault or intimidation, there's certainly some overlap in that language, but the kind of acts that would be true threats or real what we might think of colloquially as intimidation would be covered by the assault statute as threats to do bodily harm. And so that's why I'd like to also focus on and draw the Court's attention to the predecessor version of the statute. We discussed this a little bit in a footnote in our reply brief, but the original version of this statute was at 1472 of Title 49, and it set out a real laundry list of all kinds of aviation regulations and offenses. And since then, it's been editorially spread out into several different individual sections, but the cases continue to construe the statutory language the same way. And in the original version of the statute, the immediately preceding subsection, this offense was 1472J. The immediately preceding section was 1472I. That's now 46502, which is aircraft piracy. That statute says that aircraft piracy is taking over an airplane by force or violence or threat of force or violence or any other form of intimidation. And Congress intentionally added that phrase, any other form of intimidation, to be something different from force or violence or threat of force or violence. And so that's an indication that in the original statute in an immediately preceding subsection, Congress defined or wanted intimidation to mean something other than a threat of force or violence. And there's no reason to think that just because it's now spread out into different sections for readability that those definitions should mean anything different. And so that's why the government's reliance on cases like McNeil are really an opposite here, because McNeil is written completely differently. The bank robbery statute is written differently to juxtapose intimidation with force or violence, whereas here it's clearly set up to be something different. And the language of those statutes is different. And what this Court has said in cases distinguishing McNeil, for example, the most recent Winston case that was decided just a few weeks ago from the Court, that it really depends on what the statutory language is and it has to be read in context. And so the context of robbery or carjacking statutes, like the ones that were at issue in McNeil or Evans, really matters. And so even another robbery case might not follow the same definition of fear or intimidation. And here where it's a completely different statutory scheme, a completely different statutory purpose, that McNeil really should not be dispositive for our case. And, of course, all of this is depending on whether this statute is divisible in the first place. We've argued that it's indivisible. And under that theory, even the most innocent type of assault would have to be necessarily by its nature, categorically involve a threat of force or violence. And the cases are very clear that even simple assault, what would effectively be misdemeanor assault on the ground, is covered by this statute. And so if the Court finds that this is an indivisible statute, we think we would win on either theory. But just in terms of a grammatical structural reading of it, it probably reads best as indivisible. So you would say that the term assaulting or intimidating, it doesn't create different elements, different means. That's correct. And, therefore, the statute is indivisible. That's correct. And there's a case from the 11th Circuit dealing with the air piracy statute that I just discussed. That's a case called Figueroa that specifically said that those are, I think the exact language it used was, different ways of violating that offense. And, really, even though that's a 1982 case, well before this treatment of divisible and indivisible, that's an indication that long ago courts realized that these are simply different means of violating that statute. And so the government relied very heavily on its charging decision, in this and other cases, to say that that indicates that this statute is divisible. And there are two important reasons that that really can't carry the day. One is it's not the government's power to describe what elements of offenses are. So from a policy standpoint, that's really not appropriate. And then, at the same time, a defendant has no incentive to object if the government decides to narrow the grounds for conviction and to elect one means versus another and require jury unanimity as to that means versus another. And so when the government makes that charging decision, that's its choice, but that doesn't necessarily redefine the statute. Can I just ask you, because I totally understand what you're saying about that, but how do you square that with the thing in Mathis about we'll maybe take a peek at the charging documents? Can those be reconciled? Yes, because that comes at the end. If everything else doesn't give us any indication, the statutory language, the legislative history, the case law, if we really can't tell, then we can take a peek at what the government does. And, of course, so we think that it puts the car before the horse to let the government look at that first and say that this is going to be dispositive. But then, as a larger matter, we think there are plenty of cases where this is treated as means, even if we were to look at government charging decisions. And I think the Ghilardi case very clearly sets out that element one is interference and element two is by assault or intimidation, so it treats it as means. And I reserve some time if there are any other questions. Thank you. Mr. McGay, is that correct pronunciation? McGuy, Your Honor. McGuy. Yes, Your Honor. Sorry. May it please the Court, Tyler McGuy on behalf of the United States. In the government's view, Your Honor, the statutory argument here has absolutely no merit. Under the plain terms of the VWPA, the VWPA does not apply to any offense that meets the requirements of the MVRA, even if it's listed in the statute. I think a plain reading of that statute would make clear that in order to determine whether the MVRA applies or the VWPA applies, you have to look at those statutes. You first look to see if an offense meets the requirements of the MVRA. If not, if it's listed in the VWPA, that statute applies. It is sort of weird. I mean, I totally understand what you're saying, but why did Congress bother putting it in the discretionary one if its view was in every single case it's actually going to be under the mandatory law? I don't know that Congress had the view that in every single case it's going to be in the mandatory one. I think they left that determination up to the courts, Your Honor. So just to give you a little bit of the background, 3663A, the VWPA is the discretionary restitution statute. It was enacted in 1982. Courts don't have the inherent authority to issue restitution. You need a statutory basis. So that statute was the general restitution statute. And it gave courts the ability to issue restitution in criminal cases, Title 18 cases, some of the drug cases, and then also a few Title 49 cases. In 1996, Congress enacted the MVRA. Under the MVRA, restitution is mandatory. When Congress enacted the MVRA, they didn't identify specific statutes that are covered by that. They decided to cover broad categories. And when they created the MVRA, they didn't go back through all the elements. Yes, Your Honor. No, no, but that's very helpful. I understand what you're saying. Yes, Your Honor. Isn't there a rubric of statutory construction that if two statutes conflict, the general must yield to the specific even if the general was passed later? That may be true, Your Honor, but I don't understand how you can reconcile these statutes without the phrase other than an offense described in 3663A has to have some meaning. And so clearly what Congress is trying to say is that restitution applies to a series of offenses under 3663 unless it meets the requirements of the MVRA. Essentially, your view is that they wrote the airplane statute completely out of the discretionary restitution.  They left it in there so that courts would have a statutory basis to issue restitution for that offense if courts determined that it wasn't covered by the mandatory statute. But I thought your position is that any violation of the statute falls under the MVRA. It does because of the categorical approach. But Congress didn't know that 46504 was going to be a crime of violence when they wrote the MVRA. So they just kind of left all the statutes that the VWPA covered in the VWPA, and then they put in a clause that says other than an offense covered by the MVRA. So they're clearly telling courts that these statutes are covered by the VWPA unless it meets the requirements for the MVRA. Under the defense's interpretation, Title 18 is listed in the VWPA. The MVRA is a criminal restitution statute. Under the defense's interpretation, the MVRA would never apply to any offense in Title 18 because Title 18 is expressly in the VWPA. And under the defense's interpretation, the clause other than an offense in 3663AC would have absolutely no meaning. The reason the fact that 46504, the deliberate placement of that statute in the VWPA doesn't mean that that statute applies is because the statute specifically says just because an offense is listed here doesn't mean this statute applies. That's the purpose of having that clause. And the only reason they continue to make this argument on appeal is because they're trying to muddy the waters with respect to the standard of review. So below in the district court, the defense only made one argument to the district court. They said that the VWPA applies because 46504 is expressly listed in that statute. They made that in their sentencing paper. And then at the sentencing hearing, the court again asked them their position, and they said our position is that the VWPA applies because 46504 is expressly listed in that statute. They didn't say anything else. Now, on appeal, they're continuing to make that argument, and so they have properly preserved that argument, and I believe that the court could consider that under an abuse of discretion standard. But on appeal, they're making a new argument for the first time, which is actually their real argument. Their argument on appeal is that the VWPA applies because 46504 is not a crime of violence. They never said that before to the district court. As long as we're talking about arguments that are made before the district court and maybe are not being made here, am I right that in the district court you all argued that, I don't know if it was you personally, but that the government argued that the mandatory provision applied, it was enough for application of the mandatory provision that there be the identifiable victim with pecuniary loss? Yes, Your Honor, we made that argument. I made that argument. Okay, so you guys have changed your position. Correct, Your Honor. And you're no longer taking that position? No, Your Honor. Okay, is there a reason not to just send it back and let the district court deal with this? I agree with the defense counsel, Your Honor, because I think it's harmless error. I think the court made an error in reasoning induced by me, but not in the ultimate result. I believe the MVRA applies, and it's a pure question of law that the court could decide. I don't know, kicking it back to the district court to take a stab at it, and then it's going to come right back here for this court to resolve again, is a use of judicial resources. But to my point about their argument, they never made the argument that the MVRA does not apply, or that the VWPA applies because 46504 is not a crime of violence. They didn't raise that argument before the district court, so that argument should be reviewed for plain error. And under a plain error standard, you know, under any standard, I don't think the court erred in determining that interfering with a flight attendant by intimidation is a crime of violence. But certainly it's not clear or obvious under the law that it's not a crime of violence. To get to your position, we'd have to say that this statute is divisible. Correct. What's your argument that it is? My argument, Your Honor, is a straightforward application of Mathis. In Mathis, in 2016, the Supreme Court issued a test for determining whether a statute is divisible. I understand that case law is incredibly difficult to follow and understand. But Justice Kagan set out a very clear test. She said, first, you look to the statute itself, because the statute itself could give you clues. For example, if there were statute court alternatives, and each of those alternatives had a different penalty under Apprendi, that would suggest that these were elements and not means. She also says you look at the case law, because a court could have specifically addressed this issue, and if they have, you just do what the court says. But she went on to say that if the statute and the case law aren't clear, and you can't figure it out from the statute and the case law, you get to take a turkey peek at the underlying documents. You get to look at the charging document, the plea agreement, the jury instructions. That was kind of the test. And at the end of that analysis, she said, you know, after going through that analysis, it should be pretty clear. In this case, the statute doesn't tell you one way or the other whether it's divisible or not. The case law, I've conceded, doesn't have a – there's no case directly on point. But what's there certainly does appear to support the government's view that it's divisible. That Spock case that I cited from the Ninth Circuit certainly seems to suggest that these are different elements. The defense tries to say that that case isn't clear, but I would argue that if the court reads that case, it's going to be very clear. Just as a brief summary, that's a case where a passenger was smoking, didn't want to stop smoking. The flight attendant went back to explain to him that he needed to stop smoking. He grabbed her and jerked her and knocked her head into the bulkhead and caused some injuries. And he was charged with assault, assaulting, threatening, or intimidating a flight attendant. And during trial, he was acquitted of assault, but he was convicted of the intimidation prong. And so on appeal, he made the argument that the evidence wasn't sufficient for the intimidation prong because the jury rejected – because the jury rejected the assault charge, they must have rejected the allegations that he assaulted the flight attendant and he grabbed her and threw her into the bulkhead. And so all that was left was, you know, the discussion that he had with her, and that wasn't enough for intimidation. The court ultimately rejected that argument, but that's not what's important. What's important is that in that case, they clearly make clear – or they do make clear that the assault and the intimidation were separate charges. He was acquitted of one and convicted of the other, which suggests that you had to prove each of those to a jury unanimously and beyond a reasonable doubt. In addition to that, even if the court doesn't find that to be clear, if you look at the underlying documents, those are clear. I'm not saying that the court should look at the government's charging documents. I'm saying that the court should follow Mathis. The Supreme Court said that this court gets to look at the underlying documents. Here, the indictment only says intimidation. That's all we charge. During the plea call, we made clear that all we charge was intimidation, and the defendant agreed, and agreed with our proffered statement of facts. We never mentioned assault in the indictment. We never mentioned assault in the plea colloquy. So under Mathis – Yeah, it does. I mean, I understand what you're saying. It is hard to make sense of this part of Mathis, this kind of like peak that's not – because you do end up in this odd situation, right, where basically the government gets to decide what's divisible and what's not by how it charges a case. How can that be right? We could argue the theory, Your Honor, but I mean – Well, I guess I'm asking you to say as a matter of – is there something I am missing about Mathis that makes this a sensible approach? I mean, is there any answer to what appears to follow for the argument you are making that it is entirely up to you from now on whether this is a divisible or statute or not, simply by how you – whether you want to write what might well be means into the indictment. As a prosecutor, Your Honor, if these things are just means and not elements, there's no reason for me not to put them both in the indictment and to not charge them both because I could win on either one. I could instruct the jury that it doesn't matter which one you think. Five of you could think it's assault. Five of you could think it's intimidation. So that would be great for me. If this is determined to be an indivisible statute, everybody will always charge both, and then the jury will be instructed it's charged in the conjunctive, but the government can prove in the disjunctive. The government doesn't have to prove beyond a reasonable doubt one or the other. It just matters that all of you decide that one or both were satisfied. So it would be helpful to the government to charge both if it were a non-divisible statute. In addition, this Court has routinely looked at jury instructions before Mathis as determining whether or not a statute is divisible, and again, there's only one set of criminal pattern jury instructions that a circuit has ever issued. That's the Eleventh Circuit, and when they go through the elements, they put assault and intimidation in brackets. I do think it's fairly persuasive that I list here some of the proposed jury instructions in various courts, and that's because I think in a lot of cases, courts have determined that statutes are indivisible because they look at jury instructions and they see kind of the first jury instruction that you get when you get to an offense. So if you charge this offense at trial, the district judge would issue an instruction that says, the elements of this offense are, and he would go through the elements of the offense, and really all he would do is take the statute and kind of put them into categories. He wouldn't really identify whether they were elements or means. But in every case, in a lot of cases, the government asks for a proof in the disjunctive charge, which says even if we charge in the conjunctive, there's a statute that has alternatives in it, even if we charge in the conjunctive, we can prove in the disjunctive, as long as you all agree unanimously and beyond a reasonable doubt, which part of the statute the government has proved was committed here. And in many of the cases under 46504, the government is asking for that instruction. So if the idea is a statute is divisible, if the alternatives have to be proven beyond a reasonable doubt to a jury, those instructions seem to be outcome determinative of that issue. As far as whether intimidation, so in the government's view, this is a divisible statute, and the issue here is whether or not interference by intimidation is a crime of violence. I think under a very straightforward application of the categorical approach, this is clearly a crime of violence. If you look at this court's jurisprudence, even McNeil to Evans to Gardner, even to the latest case, Winston, kind of what the courts seem to be doing is you look at them. The analysis is all the same. You look at the elements. You try to identify the minimum conduct covered by that statute, and then you determine whether the minimum conduct meets the definition. Importantly, in doing that, you look at realistic probabilities, not theoretical possibilities. And if a defendant is going to say that a statute covers certain conduct, to be a realistic probability, he's got to point to the facts of his case or the facts of some other case. You can't just come in and offer hypotheticals to the court. In this case, intimidation, there's no question that intimidation means words of conduct that put a reasonable person in fear of bodily harm. I have no idea what the defense counsel was now saying at oral argument about how that is not the standard. It's the standard in Meeker. It's the standard in every single case. No one has ever said that the standard for intimidation under this statute is anything different from that. Now, the defense wants to say that, despite the fact that in a lot of cases, courts have said that that standard requires threatening the use of physical force. It said it in McNeil. It said it in Evans. And even in this court's opinion. But those are different. But that's different. Those are different statutes. What do you do with Torres-Miguel, which said that sort of, which we held, that a fear for bodily harm is not the same thing as a fear of physical force because you can cause bodily harm without the application of physical force, which seems that it might be an especially reasonable kind of issue when you're talking about plane safety, where if someone won't turn off his boombox, the plane may crash. And so you may be very worried about your safety, but only for failure to act, failure to turn off a boombox. After Torres-Miguel, Your Honor, what the courts have done, this theory or this principle that you have to look at realistic probabilities, not theoretical possibilities, came after Torres-Miguel. I understand. But I'm saying why is that not an entirely realistic thing in this context where there are cases where passengers are just being disruptive and people may reasonably fear this plane is going to go down. Because the defendant can't point to a single case where a person has been, where a defendant has been convicted under 46-504 for putting a person in fear of bodily harm without threatening the use of fire. Well, what about the guy who wouldn't turn off his boombox? So that wasn't a case where he just wouldn't turn off his boombox, Your Honor. The facts there are completely whitewashed. What about the one who, I think, touched a flight attendant inappropriately? I'm not sure about the case where he touched a flight attendant inappropriately, Your Honor, and I'm not sure if that's all it was. If he was just touching a flight attendant inappropriately, it's not clear to me that that would be a violation of the statute. That would be a simple assault, which actually governs in the airplane context. It looks to me like you're forcing us to address intimidation. Let me ask you, how would it work in your theory if we're talking about releasing snakes on an airplane or poisoning the food? Again, Your Honor, I think that what the case law says is that the defense can't offer up hypotheticals that are unrealistic. You have to look at realistic probabilities, not theoretical possibilities, and no one's ever been convicted under 46-504 for releasing snakes on a plane or poisoning food. In every case, it's been typically people acting aggressively towards flight attendants, whether they're drunk or not, they're screaming, they're yelling, they're using profanity, and they are acting in a menacing manner that causes a reasonable person in the flight attendant's position to be scared of either a physical altercation or they're going to do something crazy and cause a plane to crash. But the doing something crazy, this is what I'm concerned about. It seems very reasonable to me that you could read this language about intimidation to cover doing something crazy that would make a plane crash, but that is not necessarily going to involve physical force. It could just be opening the door to the airplane. And then people would very reasonably have a fear for their bodily safety. It doesn't seem far afield. People do act crazy on planes. This is not some kind of fanciful hypothetical. You could be convicted of intimidation because you reasonably made people on that plane think the plane would crash, but you didn't apply violent force as Johnson understands it. If you open the door of a plane that's in flight, you are absolutely going to be convicted of 46504 for putting people in fear of bodily harm. I would say that that is actually a threat, a physical force. It's an indirect threat. And after Castleman, crimes of violence do take into account indirect uses of force. Well, they do if you're applying the common law definition of force, which is what the court did in Castleman, distinguishing the statutory definition under ACCA, and probably 16 as well. I've seen a lot of cases, particularly in other districts, where the distinction between direct and indirect is no longer valid under the crime of violence definition. So you're suggesting, do you need us to win this case? Do you need us to hold that Castleman has effectively overruled Torres Miguel? I don't know that I necessarily need the court to say that, but what I do need the court to the extent that that's what Torres Miguel is saying, then maybe. But I do think that opening the door. Hang on, hang on. Not maybe. It's a big deal for us to say that another panel. Torres Miguel says clearly that kind of use of indirect force is not going to come in under ACCA as force. So if you're asking us to disregard another panel's decision in this circuit, let's be clear about it. Are you telling us that we should no longer look at that case in light of Castleman? If the court is reading Torres Miguel to say that indirect use of force can never be covered under the crime of violence definition, then yes, I do, because I think that even an indirect application of force would be a threat of force. And we said in McNeil, as I'm sure you'll recall because you rely on McNeil so heavily, there's a footnote in McNeil saying we don't think Castleman abrogated Torres Miguel. I don't know that I don't recall it saying we don't think that. It's doubtful. No, it's doubtful. We think it's doubtful. I would say, Your Honor, if you open the door of a plane and people believe that the plane is going to crash and they're going to die in a fiery explosion, the fear of physical force would be from the death of the fiery explosion. And so opening the door would be a threat of physical force. Just like if you pull the trigger of a gun and the bullet hits you in the head, that would be a use of force, too, and you wouldn't just say that I didn't punch you, I pulled the trigger, I didn't use any force. I think my time is now up. Mr. Ryan. Thank you, Your Honor. Just a few brief points in rebuttal. First, with reference to the tobacco case, we dealt with that in the reply brief. We think that that's not the best reading of what happened, and in that case, the district court clearly said with respect to the second element of the offense, the government must prove that the defendant knowingly and intentionally performed an act of assault, threat, or intimidation. We think that's an indication that, and we don't have the complete jury instruction, so I would just rely on a reply brief with the tobacco case. With regard to whether this is preserved or not, we've preserved the claim or the issue. We may have modified or clarified our arguments in support of that claim, but our claim all along has been that restitution is discretionary in this case, and the only way it would not be discretionary is if this crime is a crime of violence. And so we're really talking about, at most, two sides of the same coin, but that's not enough to be a forfeiture. What we've argued all along, our claim is this is discretionary, and that's a statutory argument. The government said abuse of discretion would actually be de novo review. And then just very briefly, with regard to whether there are realistic cases where people could be convicted of doing something very minor that might be on the level of refusing to obey a flight crew member's instructions, we've cited the Hicks case, the Mims case, where the person did something that might indirectly cause problems with the plane, but it was not a direct application of force. And then there's one final case that I apologize for just discovering yesterday, and I can submit the citation to the court. I'll do that when I get back to my office. It's a German name that I have a little trouble pronouncing. The citation is 841 F. Supp. 1169, Southern District of Florida case, where a German person on a flight from Florida to Germany got up and tried to use the restroom when he wasn't supposed to be up and got in a discussion with the flight attendant and used a German colloquialism to the effect of, if I don't go to the restroom, the roof will come off. And the flight attendant took that to be a reference to a bomb, even though he never said bomb, never indicated anything about a bomb, thought that those words, the roof will come off, meant that he was threatening the airplane. They diverted the airplane. That person was convicted under this statute. That's about the most minimal conduct that I can find anywhere of somebody. This is a realistic case. It's not a hypothetical scenario out of a movie or our imagination. That's somebody who has a conviction under this statute for doing something that completely indirectly was taken by the flight attendant as something that could cause bodily harm if the flight crew member's duties were interfered with in some way. And so, again, that citation is 841 F. Supp. 1169. So I think that's really the bulk of our argument. But to just circle back to the statutory argument, we're not trying to read the other than language out of this statute. The VWPA is very broad and says any offense under Title 18 or these other individual statutes, and then, as amended by the MVRA, says other than an offense in the MVRA. And so the other than language is still operative because it would take anything out of Title 18 that is a crime of violence or any of the drug statutes that might be determined to be crimes of violence or any of these aircraft statutes like the air piracy statute that might be considered a crime of violence. But we think it's at least some strong indication on Congress's part by leaving this statute in there when it could have very easily taken it out that it did not indicate that it should always be treated as a crime of violence. And the government really hasn't done anything to say that that language in the statute would not just be surplus if the MVRA really covers the field here. So unless there are any other questions. Thank you. Questions? Thank you very much. Thank you. Whatever you all want to do. I'm fine. All right. We'll come down and greet counsel and move to our third case.
judges: Henry F. Floyd, Pamela A. Harris, John Preston Bailey